IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01851-CBS

ERIK DANIELS

        Plaintiff,

v.

ENCANA OIL & GAS (USA) INC.

        Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
DIRECTING PLAINTIFF TO SHOW CAUSE WHY HE CANNOT BEAR THE COSTS OF
ARBITRATION

---

Magistrate Judge Shaffer

    This matter comes before the court on a motion to dismiss or stay this proceeding and compel arbitration (Doc. #9) filed on September 15, 2016, by Defendant Encana Oil and Gas (USA) ("Defendant" or "Encana"). Plaintiff Erik Daniels ("Plaintiff" or "Mr. Daniels") filed a response on October 6, 2016. Doc. #16. Defendant then filed a reply on October 31, 2016. Doc. #19. At the court's direction, both parties submitted additional briefing addressing the Tenth Circuit decision in *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017). Doc. #28; Doc. #29. This case was assigned to the Magistrate Judge on July 20, 2016. Doc. #2. Consent pursuant to 28 U.S.C. § 636(c) was obtained from all parties on September 26, 2016. Doc. #12. The court has carefully considered the motion and related briefing, the entire case file, and the applicable case law. For the following reasons, Defendant's Motion to Compel Arbitration is GRANTED and the case is STAYED pending completion of arbitration between Plaintiff and

Defendant.[1] In addition, Plaintiff is ordered to SHOW CAUSE why he is unable to pay his share of arbitration costs.[2]

## BACKGROUND

Plaintiff seeks to recover lost overtime wages under The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, on the basis that he was improperly classified as an independent contractor so that Encana could avoid paying wages required under the FLSA. *See* Doc. #1 at 2, 5. Plaintiff filed his original Complaint in this action (Doc. #1) on July 20, 2016, and alleges the following relevant facts.

From 2007 to 2015 Plaintiff was paid by Defendant to haul water and maintain its gas wells in Colorado. Doc. #1 at 2. His primary duties included "checking tanks and pumping and removing water from well sites and maintaining well sites along routes." *Id.* As part of his agreement to work for Encana, Plaintiff created a business entity which he operated called Daniels Services, LLC. *Id.* at 4. Plaintiff was classified as an independent contractor and was required to sign an Independent Contractor Agreement ("ICA"). *Id.* at 2; *see also* Doc. #16 at 2 (Plaintiff's Response to Motion to Dismiss). This ICA provides that

---

[1] Defendant's Motion is DENIED insofar as it requests dismissal of the case.
[2] The arbitration provision as written requires any claims to be brought in accord with the most recent American Arbitration Association ("AAA") rules which provide that "[a]ll other expenses of the arbitration . . . shall be borne equally by the parties." AAA, Commercial Arbitration Rules, Rule 54 (2013). Thus, the provision currently requires Plaintiff to pay half of the arbitration costs. The court may take notice of this provision because
> A court may, Sua sponte, take judicial notice of its own records and preceding records if called to the court's attention by the parties. Further . . . federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. . . . Judicial notice is particularly applicable to the *court's own records* of prior litigation closely related to the case before it.

*St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (citations omitted) (emphasis added). *See also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.") (citations omitted).

> Any dispute arising out of or related to this agreement (including any amendments or extensions,) or the breach or termination thereof, shall be settled by arbitration in accordance with the most current American Arbitration Association Rules. The prevailing party shall be entitled to recover its reasonable attorney's fees.

Doc. #9-1 at 10 (ICA attached to Defendant's Motion to Dismiss).[3] Plaintiff further alleges that during the three years preceding his complaint he "regularly worked in excess of forty hours in a workweek and normally worked 84 hours per week but was not paid overtime compensation." Doc. #1 at 5. Plaintiff contends that he should have been classified as an employee and that he is therefore entitled to additional compensation for this overtime work, together with reasonable attorneys' fees and costs as required by the FLSA. *Id.* at 2–5.

Defendant filed its Motion to Dismiss or in the Alternative Compel Arbitration on September 15, 2016. Doc. #9. Encana argues that the ICA requires Plaintiff to submit his claims to arbitration and that the court must therefore dismiss the case, or stay the case until arbitration has concluded. *See* Doc. #9 at 2, 5. Plaintiff filed his response on October 6, 2016, arguing: (1) that the arbitration provision requiring an award of fees to the prevailing party violates the FLSA; (2) that the arbitration provision requiring arbitration in accord with the AAA rules violates the FLSA; (3) that the arbitration agreement has expired; (4) that his claims do not relate to or arise out of the ICA; and (5) collateral estoppel. Doc. #16 at 4–11. Defendant argues in its reply that Plaintiff's first two arguments should be resolved by the arbitrator, not the court, and that his last three arguments have no merit. *See* Doc. #19 at 3–11. Before Defendant's Motion could be resolved the Tenth Circuit directly addressed the issue of arbitrability in *Belnap*. In the wake of that decision, this court asked the parties to address the applicability of the *Belnap* decision to the facts in this case. *See* Doc. #28; Doc. #29. Having received and reviewed this briefing, the court now grants Defendant's Motion to Compel Arbitration.

---

[3] The court may consider the ICA without converting the motion to dismiss to a motion for summary judgment. *See supra* note 2.

## ANALYSIS

**A.    Should Arbitration be Compelled?**

As an initial matter the court notes that Plaintiff "is not opposed to arbitration in principle." *See* Doc. #16 at 1.  Mr. Daniels simply asserts that "the Court should condition arbitration upon an order striking the prevailing-party attorneys' fees provision and requiring Encana to pay all the costs and expenses association with arbitration." *Id.* at 11.  Plaintiff relies heavily on *Daugherty v. Encana Oil & Gas (USA), Inc.*, in which the district court found that Encana's ICA was enforceable (with certain excisions) and ordered arbitration.  *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-CV-02272-WJM-KLM, 2011 WL 2791338 at *13 (D. Colo. July 15, 2011).  Mr. Daniels does not oppose proceeding with arbitration, provided that the same judicially-mandated reformation is applied in this case.[4]

Plaintiff's arguments that the arbitration agreement has expired, that his claims do not arise out the agreement, and that the agreement as a whole is unconscionable were unambiguously rejected by the *Daugherty* court and fly in the face of clearly established Supreme Court and Tenth Circuit law.  *See, e.g.*, *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998) ("When a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute.  This is so even if the facts of the dispute occurred after the contract expired."); *Daugherty*, 2011 WL 2791338 at *7 ("The overtime pay sought by Plaintiffs is an employee benefit directly addressed by Section 4(A) of the ICA."); *id.* at *9 ("Plaintiffs' [unconscionability] argument has some validity and the Court would likely have found that the arbitration agreement at issue here unconscionable pursuant to the Davis analysis if it were

---

[4] See also Doc. #27 (minutes of January 20, 2017 Motion Hearing) ("All parties agree to attend arbitration").

issuing this decision pre-*Concepcion*. But the Court has to take the legal landscape as it lies and cannot ignore the Supreme Court's clear message. Plaintiffs are essentially arguing that the adhesive nature of the contracts at issue here . . . makes the arbitration agreement unconscionable. In *Concepcion* the Supreme Court rejected [this] idea."). In light of Plaintiff's reliance on *Daugherty* and his implied concession that arbitration should proceed, the court will grant Defendant's Motion to Compel Arbitration and stay the case until arbitration has concluded.

**B.    Should the Entire Arbitration Agreement be Enforced?**

    **1. Is the Provision Requiring Arbitration "in Accordance With the Most Current American Arbitration Association Rules" Unenforceable?**

The more challenging questions relate to the enforceability of specific provisions of the arbitration agreement.[5] Plaintiff argues that if the arbitration agreement is enforced as written he will be unable to vindicate his rights because arbitration would be too costly. *See* Doc. #16 at 6–7. This argument highlights the apparent tension between two doctrines: the arbitrability doctrine addressed in a long line of Supreme Court cases and most recently articulated by the Tenth Circuit in *Belnap*, and the effective vindication doctrine which has an equally strong pedigree and was most recently articulated by the Tenth Circuit in *Nesbitt v. FCHN, Inc.*, 811 F.3d 371 (10th Cir. 2016).

Under the arbitrability doctrine, "[w]hen parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'" *Belnap*, 844 F.3d at 1280 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). As the Tenth Circuit has explained, "questions of arbitrability encompass two types of disputes: (1) disputes about

---

[5] To the extent that specific provisions of the agreement are unenforceable they may be severed from the contract. *See infra* Part B.3.

'*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement,' and (2) threshold disputes about '*who should have the primary power to decide*' whether a dispute is arbitrable." *Id.* at 1280 (internal citations omitted) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 944–45 (1995)). Moreover, "courts must address the second type of dispute first. In other words, the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable." *Id.*

> Consistent with this precedent, the Court has held that because an arbitration agreement clearly and unmistakably delegated to an arbitrator the issue of whether it was enforceable, challenges to the agreement's enforceability were for an arbitrator—not a court—to decide. . . . In doing so, the Court reinforced that when parties clearly and unmistakably delegate an issue to an arbitrator, courts must compel arbitration of that issue.

*Id.* at 1287.

Here the ICA explicitly provides that "Any dispute arising out of or related to this agreement (including any amendments or extensions) . . . shall be settled by arbitration in accordance with the most current American Arbitration Association Rules." Doc. #9-1 at 10. The most current AAA rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, *or validity* of the arbitration agreement or to the arbitrability of any claim or counterclaim," as well as "the power to determine the existence *or validity* of a contract of which an arbitration clause forms a part." AAA, Commercial Arbitration Rules, Rule 7(a), (b) (2013) (emphasis added). Because the parties have "clearly and unmistakably" delegated the issue of the arbitration agreement's validity to the arbitrator, the arbitrability doctrine requires the enforceability of the questioned provision to be determined by the arbitrator, not the court. *See e.g.*, *Torgerson v. LCC International, Inc.*, 227 F.Supp.3d 1224, 1230 (D. Kan. 2017) ("[Because] the parties' arbitration agreement 'clearly and unmistakably requires the arbitrator to decide questions of

6

arbitrability. . . .' [t]he court must permit the arbitrator to decide whether the fee-shifting and cost-shifting provisions of the Employment Agreement render it unenforceable").

In apparent conflict with the arbitrability doctrine, however, stands the Tenth Circuit's interpretation of the effective vindication doctrine in *Nesbitt v. FCHN, Inc*. Under that doctrine, arbitration agreements that "operate[] . . . as a prospective waiver of a party's right to pursue statutory remedies" may be struck down on public policy grounds. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). "Accordingly, an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide an effective and accessible alternative forum." *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). In *Nesbitt*, as in this case, the plaintiff alleged that she was in an employment relationship with the defendant for purposes of the FLSA.[6] *See Nesbitt*, 811 F.3d at 374–75. The *Nesbitt* plaintiff, like Daniels, had also signed an arbitration agreement which included a provision stating that "[a]rbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association." *Id.* at 374. Affirming the district court's determination that the provision was unenforceable and that the whole arbitration agreement was unenforceable as a result (because the agreement did not include a severability provision), the Tenth Circuit held that "[although] the Arbitration Agreement does not expressly mention arbitration fees and arbitrator costs. . . . it does invoke the AAA's Commercial Rules. And those Commercial Rules expressly address the issue of such fees and costs." *Id.* at 379. Thus the Tenth Circuit "reject[ed] Defendants' assertion that

---

[6] The district court explicitly noted that it was "not deciding that the plaintiff ha[d] an employment relationship" and did not need to do so in order to reach a conclusion about the enforceability of the arbitration agreement. *Nesbitt v. FCHN, Inc.*, 74 F. Supp. 3d, 1366, 1373 n.2 (D. Colo. 2014); *see also id.* at 1373 ("Assuming without deciding the existence of an employment relationship, and assuming for present purposes only that the defendants required the plaintiff to perform services on its behalf without compensation, the case implicates federal labor laws.").

7

[Plaintiff] failed to meet her burden on the effective vindication issue" since "it [was] unlikely that an employee in [the plaintiff's] position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum." *Id.* at 378–79 (quoting *Shankle*, 163 F.3d at 1234 n.4).

Moreover, the Tenth Circuit explicitly held that "being at the mercy of the arbitrator's discretion as to whether to defer or reduce her share of the arbitration fees is not the same as the protections of the FLSA," and that "*Shankle* . . . rejected the employer's argument that the arbitration agreement at issue should be enforced because of the possibility that 'an arbitrator could "shift" fees by awarding them as costs if the employee [wa]s successful on the merits.'" *Id.* at 378 (quoting *Shankle*, 163 F.3d at 1234 n.4). Thus, *Nesbitt* stands for three propositions: (1) courts can decide the enforceability of an arbitration agreement if it implicates the effective vindication doctrine, notwithstanding the arbitrability doctrine; (2) an arbitration agreement that invokes the AAA implicates the effective vindication doctrine even if the wording of the arbitration agreement itself does not; and (3) courts do not need to decide that the plaintiff was an employee in order to apply the effective vindication doctrine as long as an employment relationship is alleged. *See also Shankle*, 163 F.3d at 1235 (Appellant also contends enforceability arguments should not be decided by a court but deferred to the arbitrator. . . . However, it is within *the court's* power to consider the arbitrability of a petitioner's claims, and to consider 'whether legal constraints external to the parties' agreement foreclosed the arbitration of [statutory] claims.' Therefore, the district court properly considered the arbitrability of Mr. Shankle's claims.") (internal citations ommitted) (emphasis added) (quoting *Mitsubishi Motors*, 473 U.S. at 628).

8

Since Mr. Daniels invokes the effective vindication doctrine on the grounds of financial hardship, *see* Doc. #16 at 6–7, only one further question remains; how detailed must Mr. Daniel's showing of financial hardship be before the effective vindication doctrine invalidates the arbitration agreement provision. While the Supreme Court has never elaborated on "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence," it has explained that "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2311 (2013). "So long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 637. Moreover, the party "seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

Here Plaintiff only provides the court with the statement that he earns "approximately $600.00 every week, after taxes," and the conclusory, boilerplate assertion that "I do not have the money to pay for half of the arbitration expenses." Doc. #16-3 at 1, 2 (Affidavit of Erik Daniels). This contrasts sharply with the information provided by the plaintiff in *Nesbitt*, which revealed significantly more about her financial situation. *See Nesbitt v. FCHN, Inc.*, Civil Action No. 1:14-cv-00990-RBJ, ECF No. 19-1 at 4 (Plaintiff's Response to Motion to Compel Arbitration).[7] In addition to providing her monthly average pay, the *Nesbitt* plaintiff provided an extensive list of her living expenses—including things such as monthly rent, car payments, cell

---

[7] The court may consider its own public records without converting the motion to dismiss to a motion for summary judgment proceedings. *See supra* note 2.

phone bills, utility costs, etc.—as well as other debt such as medical bills and business insurance. *Id.* Moreover, the defendant in *Nesbitt* did not present any countervailing evidence to contradict the plaintiff's assertion of financial hardship. *See Nesbitt*, 74 F. Supp. 3d, at 1374 ("The defendants' only argument in response is that she might be eligible for a discounted rate based on a showing of financial hardship."). In contrast, Encana claims that it paid Mr. Daniels between $1.3 and $1.8 million dollars over the course of the seven years he was retained by the company. *See* Doc. #19 at 4.

While Plaintiff would likely have to provide the court with additional information even in the absence of this allegation, given the conclusory nature of his claim of financial hardship, the combination of the conclusory nature of his claims and Encana's allegation unquestionably requires Plaintiff to provide additional information about his financial situation before he can invoke the effective vindication doctrine. *See, e.g.*, *Torgerson*, 227 F.Supp.3d at 1232–33 ("Without sufficient evidence to support their assertion that the arbitration costs prevent them from vindicating their statutory rights, plaintiffs fail their burden."). Thus the court finds that this provision of the arbitration agreement is not *per se* unenforceable and orders Plaintiff to show cause why the costs of arbitration would be so high in relation to his financial situation that he would be unable to effectively vindicate his rights through arbitration.

### 2. Is the Provision that allows the Prevailing Party to Recover Reasonable Attorneys' fees Unenforceable?

Plaintiff also argues that the provision of the arbitration agreement that would allow Defendant to recover its attorneys' fees if it prevails is unenforceable because it conflicts with the FLSA. See Doc. #16 at 5–6. Once again, *Nesbitt* is instructive; while the Tenth Circuit found the provision requiring the plaintiff to "bear the expense of [her] own counsel" to be unenforceable insofar as it would preclude her from recovering her attorneys' fees *even if she*

*prevailed*, its reasoning relied primarily on the fact that the FLSA mandates that where the plaintiff prevails the court "shall allow a reasonable attorney's fee to be paid by the defendant." *Nesbitt*, 811 F.3d at 380; 29 U.S.C. § 216(b); *Nesbitt*, 74 F. Supp. 3d, at 1374 ("The FLSA relies on individuals to bring claims as private attorneys general with the promise that *should they prevail* they will be awarded their reasonable attorney's fees in addition to damages. Eliminating this assurance may significantly chill individuals and attorneys from bringing these claims.") (emphasis added). Neither *Nesbitt* nor the FLSA discusses what is required or allowed when the *defendant* prevails, however.[8] *See, e.g.*, *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) ("The FLSA's fee-shifting provision refers only to a prevailing plaintiff . . . and says nothing of a prevailing defendant.").

Here the arbitration agreement provides that "the prevailing party shall be entitled to recover its reasonable attorneys' fees," not that both parties shall bear the costs of their own counsel regardless of who prevails. Doc. #9-1 at 10. As such, the provision actually aligns with the FLSA insofar as it would allow the Plaintiff to recover his attorneys' fees if he wins. Moreover, in order for Defendant to prevail it will have to demonstrate that Plaintiff was properly classified as an independent contractor, not an employee, since it would otherwise be liable under the FLSA. *See* Doc. #1 at 2; *see also Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 627–28 (D. Colo. 2002) ("Based on the plain language of § 216(b), employees rather than independent contractors, are entitled to the protection of the FLSA."). If the FLSA's overtime provisions do not apply because Plaintiff was an independent contractor, then its fee shifting provision does not apply for the same reason. Consequently, allowing Defendant to recover its

---

[8] Courts interpreting the FLSA have held that "the 'FLSA entitles a prevailing defendant to attorney's fees only where the district court finds that the plaintiff litigated in bad faith.'" *Sanchez v. Nitro-lift Technologies, L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014) (quoting *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998)).

reasonable attorneys' fees if it prevails would not violate the FLSA. In addition, Plaintiff has not provided any concrete evidence that the mere possibility of paying Defendant's attorneys' fees would deter him from vindicating his rights. Thus, on the present record the court finds that this provision of the arbitration agreement is enforceable.[9]

### 3. Are These Provisions Severable?

The Tenth Circuit has held that "employment contracts should not be completely obliterated because some provisions are beyond the legal limits . . . unless such illegal provisions permeate the complete contract to such an extent as to affect its enforceability entirely." *N.L.R.B. v. Tulsa Sheet Metal Works, Inc.*, 367 F.2d 55, 59 (10th Cir. 1966). "Accordingly, where a contract contains a void arbitration provision it must either be deemed unenforceable where there is no savings clause to the contract or, in keeping with the presumption in favor of arbitrability in the case of a contract with a savings clause, the void language may be stricken and the arbitration agreement otherwise enforced." *Daugherty*, 2011 WL 2791338 at *12; *see also Fuller v. Pep Boys—Manny, Moe & Jack of Del., Inc.*, 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000) ("The savings clause in the 'Construction' section of the Arbitration Agreement allows me to disregard the fee-splitting provision so as to uphold the validity of the agreement.").

Here the ICA contains a savings clause which explicitly states that "[i]f any provision of this Agreement is held to be illegal, invalid, or unenforceable under applicable laws, such provision shall be severable from the remainder of this agreement, which shall remain in full force and effect." Doc. #9-1 at 10. Consequently, to the extent that either of the aforementioned

---

[9] Judge Martinez reached the opposite conclusion in *Daugherty*. *See Daugherty*, 2011 WL 2791338 at *11 ("[B]y providing for an award of attorneys' fees to the prevailing *party*, instead of a prevailing *plaintiff*, this clause in the arbitration agreement substantially thwarts the statutory enforcement scheme erected by the FLSA."). *Daugherty* was decided without the instruction provided by *Nesbitt*, however, which postdates *Daugherty* by almost five years.

12

provisions violate the FLSA they may be stricken from the arbitration agreement for good cause shown, leaving the rest of the agreement intact.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration (Doc. #9) is GRANTED and this matter is STAYED pending further proceedings. Plaintiff is also ORDERED to SHOW CAUSE within THIRTY DAYS of this order why he would be unable to pay the costs of arbitration. If, but only if, Plaintiff can show that enforcing the arbitration agreement in its entirety would be so prohibitively expensive that it would effectively prevent him from vindicating his rights, then the court will sever any problematic provisions of the arbitration agreement and direct the arbitrator to ignore them.

DATED at Denver, Colorado, this 1st day of August, 2017.

BY THE COURT:

s/Craig B. Shaffer_____
United States Magistrate Judge